## INDEPENDENT CONTRACTOR AGREEMENT

**THIS INDEPENDENT CONTRACTOR AGREEMENT** is entered into on January 1, 2016 ("Effective Date") by and between Raridon & Associates Orthopedics, Inc., an Iowa corporation having its principal offices at 10170 Hickman Court, Clive, Iowa 50325 (the "**Company**"), and Robert Schmidt, a resident of the State of Kansas, (the "**Contractor**") (individually, "Party" and collectively "Parties").

**WHEREAS,** Contractor shall serve or continue serving as an independent sales contractor for Company in connection with the sale of certain orthopedic products as described herein; and

**WHEREAS,** Contractor has had and/or will have access to Company's customers, training, confidential and trade secret information which require protection for the benefit of the Company, its vendors and affiliates; and

**WHEREAS,** Company is contractually obligated to obtain certain restrictive covenant agreements from its contractors pursuant to an agreement with DePuy Synthes Sales, Inc. and Johnson & Johnson; and

**WHEREAS,** Contractor has agreed to abide by the terms of such restrictive covenant agreements in order to establish and/or maintain his/her status as an independent sales contractor for the Company and otherwise perform services in accordance with the following terms.

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    **Services.**  Company hereby appoints Contractor to sell the products listed on Exhibit 1 (the "Products") to certain accounts and within the Territories listed on Exhibit 1, attached hereto and incorporated by this reference, during the term of this Agreement. While this Agreement is in effect and Contractor is not in default hereof, Contractor shall be permitted to sell Products to the assigned accounts and within the assigned territories. Contractor agrees to use Contractor's best efforts to sell the Products to develop the assigned territories and accounts to their fullest potential, agrees to keep Company informed of Contractor's activities and sales on behalf of Company, agrees to attend all training and educational programs required by the Company and its Vendors and Affiliates and agrees to attend all meetings as requested by the Company.

2.    **Term and Termination.**  This Agreement shall remain in effect from the Effective Date until this Agreement is terminated as provided for herein (the "Term"). Either party can terminate this Agreement without cause by giving the other thirty (30) days' prior written notice of termination. However, if either party breaches any term of this Agreement, the Agreement may be terminated immediately without the necessity of giving notice. Contractor will be paid for all services rendered as of the date this Agreement is terminated.



EXHIBIT

1

exhibitsticker.com

**Exhibit 1, Page 1 of 12**

3. **Payment.** In consideration of Contractor's satisfactory performance of the duties and obligations under this Agreement, Contractor shall be paid as outlined in Exhibit 2 attached hereto and incorporated herein by this reference. Payment shall be made to Contractor on or before the 20th day of each month. Company shall have the right to prospectively change compensation terms from time to time.

4. **Products, Accounts and Territories**. The Products, Accounts and Territories assigned to Contractor are listed on Exhibit 1, attached hereto and incorporated herein by reference. The Company reserves the right to add, delete, change or reassign Products, Accounts, Territories and commission rates from time to time and will advise Contractor of the same. The Company shall establish goals and objectives for the level of business activity and sales for each assigned Product, Account and Territory and will communicate the same to Contractor on an annual basis.

5. **Orders, Sales Prices and Payments**. All orders submitted by Contractor are subject to acceptance by Company. Contractor agrees to represent and sell Company's Products at the prevailing prices and payment terms established by Company, as of the time of the sale. Contractor agrees to instruct customers to make payments for merchandise payable directly and solely to Company and to remit such payments directly to Company. Contractor is prohibited from endorsing any check drawn to the order of Company. If for any reason payments are received by Contractor, Contractor will hold the entire amount of such payments as a fiduciary in trust for Company and remit such payments to Company immediately upon receipt, together with the information showing the identity of the customer and of the products purchased.

6. **Scope of Activity**. The Parties acknowledge and agree that Contractor is engaged in an independent business and that this Agreement does not contemplate that the Company will have exclusive use of Contractor's services. Nothing in this Agreement shall preclude Contractor from being engaged to represent or sell for other entities or principals during the Term, provided that during the term of this Agreement, Contractor and Contractor's employees and subcontractors shall not represent or sell Competitive Products (as defined herein) or engage in Competitive Activities (as defined herein) without prior written approval of Company, which may be granted or withheld in Company's sole discretion.

7. **No Employment Relationship**. The Parties' relationship hereunder shall be that of independent contracting parties and this Agreement shall not be interpreted or construed as creating any other relationship, including but not limited to that of employer-employee, principal-agent, partnership or joint venture. Contractor acknowledges and understands that, as in independent contractor, Contractor is not entitled to participate in any compensation plans, health, life or disability insurance programs or other fringe benefits which the Company from time to time provides for its employees. Contractor shall be solely responsible for procuring all insurance for himself or herself, including but not limited to medical, disability, workers' compensation, and unemployment insurance. To the extent

2

that Contractor hires employees, Contractor shall be solely responsible for the employees' wages, income tax withholdings, Social Security, unemployment taxes and workers' compensation insurance covering work performed by the Contractor's employees. Contractor shall be liable for and shall hold the Company harmless from and against all claims arising due to negligence, intentional acts and errors or omissions by Contractor in providing services under this Agreement, as well as all taxes, penalties or assessments on any compensation earned as an independent contractor hereunder, including federal and state income taxes, self-employment taxes, FICA and FUTA taxes and those taxes related to payments made by Contractor to its employees or assistants. Contractor is responsible for completing the appropriate IRS forms, and shall receive an IRS Form 1099 annually from the Company. Contractor is responsible for the payment of all costs of business equipment such as cell phones, computers, motor vehicles and/or other items incidental to the business of Independent Contractor. All personal expenses while traveling are the responsibility of Contractor. Contractor is not entitled to expense reimbursement or reimbursement for other costs. Company shall not have the right to require Contractor to conform to any fixed schedule or minimum hours of work devoted to Company's accounts, and shall not control the time, place, manner or means by which Contractor performs this Agreement. All services performed by Contractor and Contractor's employees shall conform to the highest standards and customs of professional sales contractors in the industry, this Agreement and in accordance with all applicable laws and regulations.

8.    **Limitation on Authority.** Contractor is not authorized to enter into any contract or agreement on behalf of Company, or to otherwise bind Company without Company's prior written approval. Contractor shall use Company's name and trademarks only in connection with the representation and sale of the Products.

9.    **Product Representations.** Contractor shall sell only Products which continue to conform to the specifications and quality control procedures of the Vendor(s) (as defined herein). Contractor shall make no false or misleading representations with respect to the Products. Contractor shall make no express or implied warranties of any kind regarding the Products. Contractor shall not knowingly submit to Company false information, or information known by Contractor to be inaccurate or misleading regarding (a) sales of Products; (b) customers to whom Products were sold; (c) expenses which were or are to be paid or reimbursed in whole or in part by Company; or (d) the inventory of Products in the State(s) of Illinois, Iowa, Nebraska, Kansas and Missouri.

10.    **Covenants.** The Parties acknowledge and agree that the Company has made a considerable investment in developing its trade secrets and proprietary business methods and information, acquiring and retaining its customers and that Contractor will have substantial contact with customers and is and will be uniquely positioned to acquire commercially valuable information about Company customers. The Parties therefore acknowledge and agree that it is vital that the confidentiality of the Company's business methods, proprietary Products information, services, records and information be protected, and that the Company is protected from solicitation and competition by Contractor during the term of this Agreement and for a reasonable time following the

3

termination or expiration of the Agreement. Contractor also agrees that these provisions shall run to the benefit of the Vendors and their Affiliates who shall have the same right to enforce these provisions as the Company. Therefore, the Parties agree to the covenants set forth below:

(a)    **Definitions:**

**"Affiliate"** shall mean any other entity controlling, controlled by or under common control with Vendor.

**"Competitive Activities"** shall mean selling, offering for sale, promoting, receiving or soliciting orders for Competitive Products or accepting remuneration of any kind from any person providing such goods or services.

**"Competitive Products"** shall mean any Product or service that competes with a Product set forth in Exhibit 1 or any modification or amendment to Exhibit 1 and any orthopedic, spinal, sports medicine, bracing, biocomposites neurosurgical or trauma product or service or any other product or service similar to or intended for a similar use as those offered or provided by the Company or its Vendors or Affiliates.

**"Solicitation Activities"** shall mean to solicit, employ, retain or offer to retain (whether as an independent contractor or otherwise), any (i) employee, contractor or agent of Company or Vendor(s), or (ii) any person or entity which is engaged, whether full-time or part-time as an employee, contractor or agent of any third party in the marketing, sale or distribution of any Competitive Product or any other products or services of Company or Vendor(s).

**"Territory"** shall mean those territories listed on Exhibit 1, as amended from time to time.

**"Vendor"** shall mean Johnson & Johnson and DePuy Synthes Sales, Inc.

(b)    **Confidentiality and Trade Secrets**.    As used in this Agreement, "Confidential Information" shall mean any and all information and compilations of information relating to Company's or Vendor'(s) business which Company or Vendor(s) provided to Contractor, or to which Contractor had or has access while affiliated with Company, Vendor(s) or Affiliates, and which information or compilations of information are not generally known to the public, including without limitation, customer lists, customer preferences, account history information, business and operations strategies, sales and marketing strategies, products in development, financial information, pricing strategies, commission structure, Identified Prospective Customers, and trade secrets. Contractor shall hold in confidence and agree not to use or disclose to others any trade secret or Confidential Information possessed from time to time by Contractor that relates to Company or Vendor(s) or Affiliate(s), other than as required in the course of performing Contractor's obligations under this Agreement. Upon termination of this Agreement for any reason, Contractor agrees to return to Company Confidential Information and all other

4

property or documents belonging to Company or that relate to Company's, Vendor(s)' or Affiliate(s)' business or that contain trade secrets or Confidential Information of the Company, Vendor(s) or Affiliate(s) and are in Contractor's possession, custody or control (including electronic copies). Contractor's obligation of confidentiality shall survive such termination and shall remain in effect until and unless such trade secrets or Confidential Information have become, through no fault of Contractor, generally known in the public domain or have reached the end of their useful life, whichever occurs first. All Confidential Information is and shall remain the sole and exclusive property of the Company. "Identified Prospective Customers" includes organizations, businesses or individuals that have been identified by the Company as an opportunity for obtaining future business (whether directly or through referral of other business).

(c).    **Protection of Company's Goodwill**. Contractor agrees that for a period of one (1) year after the termination of this Agreement, Contractor will not, directly or indirectly, on Contractor's own behalf or in association with or through any other individual or entity, engage in Competitive Activities in the Territory or the solicitation of Company customers or accounts with whom Contractor had personal contact during the term of this Agreement. For purposes of this Section 10(c) only, Competitive Products and/or Competitive Activities shall include only products and/or services which were sold or provided by the Company at the time of such termination and shall not include any other products or services sold or provided by any other J&J company. For purposes of this Section (c) only, Company customers include customers having done business with the Company during the one (1) year prior to termination of Contractor's relationship.

(d).    **Non-Solicitation of Other Independent Sales Contractors or Employees**. Contractor agrees that for a period of one (1) year after the termination or expiration of this Agreement, Contractor will not directly or indirectly engage in Solicitation Activities.

(e).    **Non- Interference**.    Contractor agrees that for a period of one year following the termination of this Agreement, Contractor shall not directly or indirectly interfere with the Company's or Vendor's business.

(f)    **No Sales of Competitive Products**. Contractor agrees that commencing on the Effective Date of this Agreement and continuing until its termination, Contractor will devote Contractor's best efforts and sufficient working time to selling the Products identified on Exhibit 1 attached hereto, and shall not engage in the sale of Competitive Products (as defined herein) or in Competitive Activities (as defined herein) without obtaining prior written consent from the Company. If Contractor is involved in the sale of Competitive Products or in Competitive Activities on the Effective Date of this Agreement, then Contractor agrees to cease such sales and activities immediately or as soon as contractually permissible and shall advise the Company President accordingly. Neither Contractor nor any member of Contractor's immediate household will receive compensation for the sale of Competitive Products or Competitive Activities

Contractor agrees that no claim that Contractor has against the Company shall constitute a defense to enforcement of this Section.

5

11.    **Reasonableness and Enforcement of Covenants**.  It is understood and agreed that the restrictions in paragraph 10 do not prevent Contractor from earning a living. It is further agreed that Contractor is not restricted from engaging in other lines of work, or from pursuing a profession as a sales representative in the sale of other products or for other companies, subject only to the foregoing limited restrictions.  Contractor agrees that the restrictions in paragraph 10 are necessary, reasonable and fair measures to protect Company's secrets and goodwill which are entrusted to Contractor under this Agreement; that a violation thereof will cause Company irreparable harm which cannot be fully remedied by monetary damages; and that in the event of a violation, Company shall be entitled to, without the necessity of posting a bond, injunctive relief and all damages and other relief which any court or jury may award at law or in equity including reasonable attorney's fees to the Company should it maintain a successful action to enforce the covenants in Paragraph 10.  Contractor further agrees that in the event of a violation of paragraph 10(c) (Protection of Company's Goodwill), the one-year restriction shall be extended during the period of violation so that Company is afforded the protection of the full one year.  Contractor acknowledges that Contractor will not be unduly burdened by the enforcement of paragraph 10.

12.    **Compliance**.  Contractor will not alter or modify the Products or the original packages or repackage the Products in any way prior to delivery.  Contractor shall at all times conduct his/her activities in accordance with the labeling limitation on the Products, the terms of this Agreement, the policies and procedures of Company and Vendor(s), and in compliance with applicable state and federal laws in effect from time to time, and FDA regulations, including establishing and implementing any required control, record keeping and reporting procedures. Contractor agrees to use its best efforts to cause its officers, employees, agents, and or contractors to comply with the provisions of this paragraph. Contractor agrees to comply with the General Training and Arrangements Training obligations as described and set forth in the CIA. Contractor shall:  (a) use its best efforts to cause its officers, employees, agents and or contractors to distribute copies of the Vendor(s)' Code of Conduct, the Vendor(s)' Health Care Compliance Program(s) (the "HCC Programs"), and other relevant Vendor(s) policies and procedures, including, without limitation, those policies and procedures addressing the prevention of Healthcare fraud and abuse; (b) abide by and comply with the requirements of such Code of Conduct, the HCC Programs and other relevant Vendor(s) policies and procedures and all applicable laws and regulations; (c) use its best efforts to cause its officers, employees, agents and/or contractors to abide by and comply with the requirements of such Code of Conduct, the HCC Programs and other relevant Vendor(s) policies and procedures and all applicable laws and regulations; (d) distribute information about the Vendor(s) program for reporting suspected incidents and/or concerns related to the HCC Programs and/or healthcare fraud and abuse, including without limitation, "hotline" phone numbers and Vendor(s)' contacts for the reporting of such matters; (e) ensure its officers, employees, agents and/or contractors are trained regarding Federal Anti-Kickback Statutes through participation in training provided or offered by either Vendors, the Company, or a third party acceptable to the Company; and (f) screen officers, employees, agents and/or contractors to ensure that such individuals are not Ineligible Persons as described at

6

Section III.G of the CIA. Contractor shall, as requested by Vendor(s) and/or Company, certify that it and/or its officers, employees, agents and contractors have received a copy of the code of conduct, HCC Programs and relevant Vendor(s) policies and procedures, have received Anti-Kickback Statute training. Contractor further certifies that it has conducted screening of its officers, employees, agents, and contractors and excluded any Ineligible Persons. Contractor shall operate in compliance with all applicable state and federal laws in effect from time to time, including FDA regulations, establishing and implementing any required control, record keeping, marketing and sale of Products procedures. Contractor shall provide Company with such information and data as may be requested by Company pursuant to this Agreement, which such information shall be accurate to the best of Contractor's knowledge. Contractor further agrees to report to Company any complaints received from any source with respect to Products, including without limitation, report of adverse events involving the products and shall engage in any training the Company determines is necessary related thereto. Contractor agrees to use its best efforts and to cause its officers, employees, agents and contractors to comply with the provisions of this Paragraph.

13. **Contractor Representations and Warranties.** Contractor represents and warrants that Contractor has not and will not engage in any advertising or promotion of any of the Vendor(s)' or Affiliate(s)' products without prior consent from the Company, nor will Contractor develop, create or use any other promotional literature or material·than what is provided by Company, Vendor(s) or Affiliate(s). Contractor represents and warrants that Contractor will promote the Products for their intended uses and will not make any representations or warranties for any products other than those authorized by the Company, Vendor(s) or Affiliate(s). Contractor also represents and warrants that Contractor is not bound by any other contract, agreement or obligation with any other person or entity that would prevent Contractor from fully performing his/her duties under this Agreement and further agrees to abide by the terms of any existing agreements between Contractor and any prior employer or entity.

14. **Subcontractor Obligations.** To the extent that Contractor employs or contracts with individuals or entities (hereinafter defined as "Subcontractors") to carry out the duties associated with marketing or selling the Products discussed herein, said Subcontractors shall be subject to and bound by each and every covenant set forth herein, including but not limited to covenants addressing competition, confidentiality, goodwill, interference and training. Contractor expressly agrees that every Subcontractor working on Contractor's behalf shall sign an agreement with Contractor containing the aforementioned covenants which shall run to the benefit of the Company and Vendor(s). In the event that any Subcontractor ceases to become affiliated with Contractor or breaches or threatens to breach any of the aforementioned covenants, Contractor shall immediately notify Company and shall, in the case of breach or attempted breach, immediately seek injunctive relief against the offending Subcontractor. The Company and Vendor(s) shall have the right to join in any injunction or enforcement action and Contractor may not object to the same. Contractor must obtain assurances and agreements from all Subcontractors indicating their assent to the terms in this Paragraph.

Contractor further represents and warrants that all Subcontractors will be provided with and will attend appropriate training as required by Company and its Vendors or Affiliates.

15.    **Waivers**.  No waiver of any provision of this Agreement shall be effective unless agreed to in writing by the party against whom such waiver is sought to be enforced. No waiver of any default or breach hereunder, nor any delay or partial exercise of any right or remedy arising as a result of any such default or breach, shall constitute a waiver of any other default or breach whether similar or otherwise, nor shall it prevent or preclude the non-breaching party from exercising such right or remedy upon the occurrence of a subsequent default or breach.

16.    **Breach/Remedies**.  Actual, compensatory and/or punitive damages are available for breach of any term of this Agreement.  Nothing herein shall serve to diminish or eliminate any otherwise available equitable remedy, including without limitation an injunction against further violations.

17.    **Third Party Beneficiaries**.  Contractor agrees and acknowledges that the Vendor(s) have asked the Company to obtain Contractor's assent to the terms herein, and that the Vendor(s) are third party beneficiaries of the rights of Company hereunder and may enforce such rights directly by the initiation of any legal or equitable proceeding against Contractor or by seeking any other remedy under applicable laws or regulations.

18.    **Severability**.  If any provision of this Agreement shall for any reason be held invalid, unenforceable or contrary to public policy, whether in whole or in part, the remaining provisions shall not be affected by such holding, and the Agreement shall be carried out as nearly as possible according to its original terms and intent, unless to do so would substantially and unfairly alter the respective rights and obligations of the Parties.

19.    **Insurance.**  During the term of this Agreement, Contractor shall maintain in full force and effect, in a form and amount satisfactory to Company, workers' compensation insurance covering Contractor and its employees and contractors, motor vehicle liability insurance covering any travel by Contractor and its employees or contractors, and any other insurance coverage necessitated by rendering services under this Agreement.

20.    **Notices**. All notices and other communications made under this Agreement shall be given in writing and sent or delivered using the following contact information:

**Contractor:**

| | |
|---|---|
| **Name:** | Robert Schmidt |
| **Address:** | 8943 Chestnut |
| | Lenexa, KS 66220 |
| **Phone:** | 913-484-6788 |
| **Email:** | robert@schmidtmedical.com |

8

**Company:**

Name:                    Raridon & Associates Orthopedics, Inc.
Address:                 10170 Hickman Court
                         Clive, IA 50325
Phone:                   515-276-6962
Email:                   sraridonjr@raridon.org

21.    **General Provisions.**

(a)    This Agreement shall be governed by and construed in accordance with the laws of the State of Iowa without regard to choice of law principles. The Parties agree that any legal action, suit or proceeding seeking to enforce any provision of this Agreement shall be instituted and adjudicated solely and exclusively in any court of general jurisdiction in Des Moines, Iowa or in the United States District Court having jurisdiction in Des Moines, Iowa. The Parties agree that venue will be proper in such courts and waive any objection which they may have now or hereafter to the venue of any such suit, action or proceeding in such courts, and each hereby irrevocably consents and agrees to the jurisdiction of said courts in any such suit, action or proceeding.

(b)    This Agreement may not be modified or amended, nor may any provision hereof be waived, without the prior written consent of the party to be bound by such modification, amendment or waiver.

(c)    This Agreement is binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and permitted assigns. The Covenants and obligations herein (i) are assignable in whole or in part, and shall be automatically assigned in whole or in part, to Vendor(s) upon Vendor(s)' request without Contractor's consent; and (ii) are for the benefit of the Company and Vendor. Vendor shall also have the right and sole discretion to directly enforce such provisions in Company's name and for the benefit of Company. This Agreement may not be assigned by Contractor without the prior written consent of Company, which may be withheld for any reason. Company may not assign this Agreement to any person or entity other than a Vendor without the prior written consent of Contractor, which shall not be unreasonably withheld.

(d)    This Agreement supersedes and replaces all prior agreements or understandings, whether oral or written, with respect to the subject matter hereof.

(e)    The captions herein are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such sections, nor in any way affect this Agreement.

(f)    This Agreement may be executed in one or more counterparts, all of which shall together constitute one and the same instrument and shall become effective when one

or more counterparts have been signed by each and every party hereto and delivered to each and every other party hereto.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

**CONTRACTOR, Robert Schmidt**

_____    12-22-15
                                    _____
                                    Date

**RARIDON & ASSOCIATES ORTHOPEDICS, INC.**

By:_____    1/10/16
Scott Raridon, Jr. President           _____
                                       Date

10 **Scanned by CamScanner**

**Exhibit 1, Page 10 of 12**

<u>**Exhibit 1**</u>
**Products, Accounts and Territories**

**"Products" shall mean the following items:**

**Hips, Knees, Shoulders, OR Products, Cement**
**Synthes Power Tools, Biocomposites**

**"Accounts" and "Territories"  assigned to Contractor shall be:**

| | | |
|---|---|---|
| **Stormont Vail Hospital** | **Topeka, KS** | **All Surgeons** |
| **Centerpoint Hospital** | **Independence, MO** | **Dr. Greiner**<br>**Dr. Hummel**<br>**Dr. Krempec**<br>**Dr. Ballard** |
| **North Kansas City Hospital** | **Kansas City, MO** | **Dr. Krempec**<br>**Dr. Witte**<br>**Dr. Cornett**<br>**Dr. Justice**<br>**Dr. Paul** |
| **St. Luke's East Hospital** | **Kansas City, MO** | **Dr. Krempec** |
| **Kansas City Orthopaedics Inst.** | **Leawood, KS** | **Dr. Gurba** |
| **Liberty Hospital** | **Liberty, MO** | **Dr. Monahan**<br>**Dr. Steinbronn** |
| **Newman Regional Hospital** | **Emporia, KS** | **All Surgeons** |
| **Mercy Hospital** | **Manhattan, KS** | **All Surgeons** |
| **Manhattan Surgical** | **Manhattan, KS** | **All Surgeons** |
| **Providence Medical Center** | **Kansas City, MO** | **All Surgeons** |

**Territory includes all accounts paid on most recent commission statement**

11

**Exhibit 1, Page 11 of 12**

**<u>Exhibit 2</u>**
**Compensation**


**Depuy Ortho Joint Reconstruction – 9%**
**Synthes Power Tools – 9%**
**Biocomposites – 15%**

**Contractor will pay $3,000/month of guaranty for Ross Nichols.  Monies to come from**

**Depuy Ortho Joint Recon sales within the territory – with the exception of Stormont**

**Vail/Topeka**

12

**Exhibit 1, Page 12 of 12**